## Kellyville Coal Company v. William J. Moreland.

1. EXPERT OPINION—*when question calling for, erroneous.* A question as follows: "As an expert miner what would you say was necessary to have been done in that mine, taking into consideration the condition that existed up and prior to the time of the injury, to have made it reasonably safe," and like questions are erroneous, especially where it does not appear that the witness knew the condition referred to in the question.

2. MINE OWNER—*degree of care required of, at common law.* In an action for personal injuries against a mine owner, a recovery can be had, where the declaration relies upon the common law, only by showing the failure of the defendant to exercise ordinary care.

3. PERSONAL EXAMINATION—*court without power to order.* In an action for personal injuries, the trial court is without power to en-

ter an order compelling the plaintiff to submit his person to an examination by a physician of the defendant.

Action on the case for personal injuries. Appeal from the Circuit Court of Vermilion County; the Hon. J. W. CRAIG, Judge, presiding. Heard in this court at the November term, 1904. Reversed and remanded. Opinion filed June 7, 1905.

H. M. STEELY, for appellant.

A. H. PARTLOW and S. M. CLARK, for appellee.

MR. JUSTICE GEST delivered the opinion of the court.

Appellee brought this suit for personal injuries sustained by him while employed in the coal mine of appellant.

The declaration avers that plaintiff was employed in the mine as an entry driver in what is called the fifth south southwest entry, that defendant negligently failed to keep said entry at a point near room ten in a reasonably safe condition, whereby a portion of the roof fell upon plaintiff and injured him while he was in the exercise of due care, pursuing his work as such entry driver. The accident happened on the fifteenth day of December, 1903, between ten and eleven o'clock in the morning. As the entry was driven room-necks were cut on the left side and cross-cuts on the right side with a cutting machine which was operated by plaintiff and his helper. The room-necks and cross-cuts were not directly opposite. The south side of the cross-cut was on a line with the north side of the room-neck. They were about ready to turn off room-neck 13 when the accident occurred. The room-necks from No. 10 to No. 13 were about forty feet apart. Plaintiff was going back from the face of the entry to the sight bars which were back of room ten. Sight bars are used for the purpose of sighting the entry to keep it straight. When opposite room-neck ten a small stone from the roof fell and knocked plaintiff down and then a large one from three and a half to four feet long, two feet wide and two to five inches thick fell on him and seriously injured him. A verdict was rendered for the plaintiff for $2,000 and judgment entered thereon.

It was incumbent on the plaintiff to prove by legitimate evidence that defendant was guilty of negligence. Plaintiff's witness, William Webber, testified on direct examination that he had seen the timber man working in and around the point where the accident occurred taking down rock and cleaning up. On cross-examination he stated that he did not know whether it was before or after the accident that he had seen them working there. Plaintiff's witness, Alex Crane, stated that Fred Trent was timber-man and rock-man; that a few days before the injury to plaintiff he called Trent to take down a loose rock in the locality of the accident; that he gave Trent notice of loose rock somewhere in that vicinity. Plaintiff's witness, Everett, stated that he had noticed the conditions at room ten about a week before the accident, but states nothing of what he saw. Plaintiff's witness, Ruschel, states that the rock which fell on plaintiff is what miners call a slab that had scaled off of the roof. Two of plaintiff's witnesses say there was no chalk mark on the stone that fell on the plaintiff. Fred Trent, the timber-man, denies having had any conversation with either Webber or Crane as testified to by them, said he had never been called to that point or vicinity to take rock down. The plaintiff testified that the roof at the place where he was hurt looked solid when he would examine it and go under it. Cruikshank, mine examiner at defendant's mine, stated that he examined the mine throughout during the night of the day before the accident, December 14; that he carried his light and a sounding rod; that he walked through the entire mine, rooms and entries, and sounded as he walked and marked with a chalk mark where he found loose rock; that he found no loose rock or other dangerous conditions in that entry; that by room-neck No. 10 there was a good smooth roof in the entry. J. A. Donaldson, assistant mine manager of defendant, states the roof was smooth and solid at the place of the accident; that he went down that entry every day or every other day with his sounding rod and examining the roof. Karroll, witness for defendant, says he noticed the roof at the

place of the accident the day before the accident; that it was smooth and there were no cracks in it.

The foregoing is substantially all the testimony in the record tending to show the actual situation of the roof at the place of the accident or its vicinity just previous to the accident.

The court, over defendant's objection, allowed the following question to be answered by plaintiff's witness, Webber: "As an expert miner what would you say was necessary to have been done in that mine, taking into consideration the condition that existed up and prior to the time of the injury, to have made it reasonably safe?" The witness answered: "I think the entry should have been cross-barred," and then proceeded to make a lengthy statement how that could be done. The question covers the entire mine, it assumes that the witness knew the "condition" whereas he testified to no facts showing its condition at the place of the accident and previous to the accident; it calls for an expert's opinion without any statement of facts on which it was to be based, and it assumes that the place was not reasonably safe, one of the precise questions the jury were to determine from the evidence. The plaintiff's witness, Crane, was asked: "As a practical miner what would you say was necessary there, taking into consideration the conditions as you saw them, to make that roof reasonably safe?" and over defendant's objection he answered: "Well, I think there should be timbers there, myself. Put up a couple of posts or cross-bars to make it perfectly safe." The same question was put to the plaintiff's witness, Ruschel, except that he was directed to take into consideration "the conditions as you saw them immediately after the accident," and he answered: "Why, I would say to timber it, put up a neck-bar in the roof and a cross-bar in the entry." The plaintiff's witness, Everett, in answer to a like question, objection to which was overruled, said: "Well, there should be a neck-bar over the room and cross-bars in the entry," and in answer to the question, "For what reason should these timbers be placed as you have described?" said: "Why, to make the roof safe, I should

judge." By allowing these questions to be asked the court in substance told the jury that the entry was not in reasonably safe condition at and prior to the time of the accident. The defendant was not an insurer. The declaration was at common law, not under the statute concerning mines. All the defendant was bound to do was to use reasonable care to provide a reasonably safe place for plaintiff to work in. Whether it did use reasonable care and whether the place was reasonably safe were both questions of fact to be determined by the jury and neither question should have been assumed against the defendant by court, counsel and witness as was done, and especially so in view of the meager proof that was made by plaintiff on both questions. There is much other matter in this record highly injurious to defendant. The following is a part of the plaintiff's examination of his witness, Webber, who was an ordinary coal miner in that mine:

"Q. In what manner should this inspector perform his labor?

Mr. Steely. I object to that. That is entirely foreign to the issues here.

The Court. He can answer the question.

Exception by defendant.

A. By examining the top and the air.

He examines the top with a sounding rod that he carries made of steel, I presume.

Q. How frequently should he make this examination through the entry?

Objected to by defendant.

The Court. How frequently was it the custom there to do it?

Q. What I mean is, how often would he sound the roof through an entry in making a proper examination?

Objected by defendant.

The Court. Yes, the proper examination. How often did he do it?

A. Once every twenty-four hours.

Kellyville Coal Co. v. Moreland.

Q. Well, you don't get my point. What I want to know is, how did he make this examination?

A. Well, I suppose he does it at almost every point that he has any idea there is a loose rock. Of course an experienced man he knows in walking along; he observes the top, and if he sees a place he has any doubt about he makes his examination there. If there is timbers or an indication in the roof that it is perfectly safe, he doesn't examine it. As a rule he may throw his rod up against it and walk on, but it is the dangerous places he makes the closest inspection of.

Q. A place like this, where there was cross-cut and a large opening, such as you have described, exposed without timbers, in what manner would he make his examination at such points?

Objection to by defendant. Objection overruled. Exception by defendant.

A. He should make a thorough examination of a place of that kind."

All of which was irrelevant, incompetent, misleading and prejudicial. There are many other instances of like character.

There was no error in refusing appellant's motion to compel appellee to submit his person to an examination by a physician for the defendant. The court has no such power.

The first instruction given for plaintiff as printed in the abstract is not clear. It is open to two constructions. One construction is that the defendant was guilty of negligence if it did not have the roof in reasonably safe condition, and the other is that the defendant was guilty of negligence if it had not used reasonable care to have the roof in reasonably safe condition. The first construction is manifestly not the law. When the evidence is conflicting and close the instructions should be accurate. Doubtless upon another trial more care will be exercised in the examination of witnesses and the preparation of instructions.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*